**MISSOURI PACIFIC RAILROAD COMPANY, Appellant,**

v.

**STAR CITY GRAVEL CO., INC. and Tilmon A. Adams, Appellees.**

No. 78–1556.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 14, 1978.

Decided Feb. 12, 1979.

Robert V. Light and Herschel H. Friday, of Friday, Eldredge & Clark, Little Rock, Ark., on brief for appellant.

Alan R. Humphries, of Eilbott, Smith, Eilbott & Humphries, Pine Bluff, Ark., on brief, for appellees.

Before STEPHENSON, HENLEY and McMILLIAN, Circuit Judges.

HENLEY, Circuit Judge.

Missouri Pacific Railroad Company (the Railroad) appeals the judgment of the district court denying it court costs and indemnity in the amount of $76,000.00 from Tilmon A. Adams. We affirm.

The Railroad brought this diversity suit in the Eastern District of Arkansas (The Honorable Elsijane T. Roy, District Judge, presiding) to recover $80,000.00 it had paid in settlement[1] to James West, a conductor on one of its trains, who was injured when the train came to an emergency stop to avoid hitting a truck owned by Star City Gravel Company and driven by its agent, Tilmon Adams. Adams had stalled the truck on the railroad tracks. The Railroad

sought indemnity, or, in the alternative, contribution from Star City and Adams, alleging that Adams' negligence in stalling the truck was the proximate cause of West's injuries.

The case was submitted to a jury on special interrogatories which asked for apportionment of the relative fault for the accident among the parties as required by the Arkansas comparative fault statute, Ark.Stat.Ann. §§ 27–1763 et seq. (Supp. 1975). No interrogatories or instructions relative to the Railroad's indemnity claim were requested or given. The jury returned a verdict finding Star City and Adams responsible for only five per cent of the total negligence which proximately caused West's injuries. The Railroad, on the other hand, was deemed ninety-five per cent at fault. Because of this verdict, the district court at first dismissed the Railroad's complaint after concluding the comparative fault statute barred recovery by any joint tortfeasor found fifty per cent or more at fault. The Railroad subsequently filed a motion to amend this judgment, seeking court costs, contribution in the amount of $4,000.00[2] from Star City and Adams, jointly and severally, and indemnity for the remaining $76,000.00 of the settlement figure from Adams alone. This motion was granted by the district court as to the claim for contribution. On reconsideration it determined the Railroad had established a proper claim for contribution under Arkansas' version of the Uniform Contribution Among Tortfeasors Act, Ark.Stat.Ann. §§ 34–1001 et seq., which provides that the relative degrees of fault of joint tortfeasors may be considered in determining their rights to contribution. See Wheaton Van Lines, Inc. v. Williams, 240 Ark. 280, 399 S.W.2d 258 (1966). But the court denied the railroad's claim for indemnity from Adams and its request for court costs. The Railroad now appeals these latter determinations.

---

1. West submitted his claim for damages against the Railroad pursuant to the Federal Employers' Liability Act, 45 U.S.C. §§ 51 et seq. The Railroad voluntarily settled this claim and obtained from West a release from liability for all parties to this suit.

2. This $4,000.00 figure was calculated by charging Star City and Adams for five per cent of the $80,000.00 settlement—an amount proportionate to the fault attributable to their actions under the jury's verdict.

█ We are in agreement with the district court's opinion insofar as that court rejected the Railroad's contention that the vicarious or "passive" nature of its liability entitled it to indemnity from the "active" tortfeasor Adams as a matter of law. While indemnity is commonly granted where liability has been imposed on a person not because of any fault on his part but solely because of his *relationship* to the one at fault, this doctrine does not apply to the Railroad's claim since there is no employer-employee or other "agency-type" relationship between the Railroad and Adams on which to base imputation of liability to Adams. The jury verdict assigned ninety-five per cent of the fault for West's injuries to the Railroad which was, of course, acting through its employees. And, as the district court concluded, the Railroad is vicariously liable for the negligent acts or omissions of its employees which caused West's injuries. *See generally* Prosser, The Law of Torts § 70; Seavey, Handbook of the Law of Agency, § 84. It cannot shift this vicarious liability to Adams simply because he was personally negligent while its negligence was imputed. The Railroad, and not Adams, was in a position to control its employees; and their negligent acts were thus properly imputed to it under universally recognized agency principles.

█ We have some difficulty, however, with the district court's treatment of the Railroad's second theory of indemnity recovery. The Railroad's briefs and pleadings contain general allegations that it is entitled to indemnity because the actions of its agents were "passive" in that the agents merely failed to timely discover and avoid the dangerous situation created by Adams' "active" negligence in stalling his truck on the railroad tracks. This theory finds support in the caselaw. As Dean Prosser has noted, "there is . . . considerable language in the cases to the effect that one whose negligence has consisted of mere passive neglect may have indemnity from an active wrongdoer." Prosser, *supra*, § 52. *See also Miller v. Pa. Ry. Co.*, 236 F.2d 295 (2d Cir. 1956); *Chicago Great W. Ry. Co. v. Casura*, 234 F.2d 441, 449 (8th Cir. 1956); *Southwestern Greyhound Lines, Inc. v. Crown Coach Co.*, 178 F.2d 628, 631–32 (8th Cir. 1949).

█ It is unclear whether Arkansas would allow common law indemnity under this theory; but the district court, apparently acting under the assumption that it might,[3] rejected the Railroad's claim on the merits. The court noted there was evidence in the record indicating the Railroad had negligently failed to maintain its right of way free from visual obstructions and that the jury could have considered this evidence in its assignment of fault. This led it to determine that "[b]y the employment of the term 'proximate cause' in the interrogatories, and the answers entered thereto, it is reasonable to conclude that the jury determined that both plaintiffs and defendants were actively at fault." We think this conclusion was unduly speculative and is unsupported by the jury's verdict. While it is true the jury assigned ninety-five per cent of the total fault or negligence to the Railroad, this assignment did not speak to the distinct issue of whether the negligent acts

---

3. The district court, although addressing the Railroad's common law indemnity claims on the merits, determined as an alternative ground for its decision that Arkansas would reject common law indemnity in favor of a universal application of its contribution and comparative fault statutes. Early decisions of the federal district courts in Arkansas assumed the Arkansas Supreme Court would allow common law indemnity in a negligence action, *see, e. g., Transport Ins. Co. v. Manufacturers Cas. Ins. Co.*, 226 F.Supp. 251 (E.D.Ark.1961), *aff'd sub nom. Pacific Nat'l Ins. Co. v. Transport Ins. Co.*, 341 F.2d 514 (8th Cir. 1965); *Fidelity & Cas. Ins. Co. of N. Y. v. J. H. Jones Const. Co.*, 200 F.Supp. 264, 271–72 (E.D.Ark.1961), *aff'd*, 325 F.2d 605 (8th Cir. 1963); but the Arkansas court, although citing the federal position with approval in *Pickens-Bond Const. Co. v. N. L. R. Elect. Co.*, 249 Ark. 389, 459 S.W.2d 549 (1970), has never ruled directly on the issue. And there is actually no way of knowing what position the Arkansas Supreme Court will take on this issue in light of that State's recently adopted comparative fault statute. Since we affirm on other grounds stated in this opinion, we do no more here than note that the district court's prediction of rejection of indemnity by Arkansas is entitled to great weight in this court.

of the Railroad's agents were active or passive in character.

■ This is not to say that the district court's erroneous assumption entitles the Railroad to a new trial on this issue as a matter of right. It was the responsibility of the Railroad to establish the character of its agent's negligence as a part of its indemnity cause of action. As a Missouri appellate court has stated,

> [a]s an essential element of his case it is incumbent upon the indemnitee to plead and prove that his negligence towards the injured party was only secondary and passive, and that of the indemnitor active and primary . . . It was necessary for the jury to find that plaintiffs [in the indemnity suit] were guilty of negligence. Otherwise, plaintiffs would not have been warranted in making a settlement with the [injured party]. But the jury was further required to find that such negligence was passive and that the defendant was guilty of active negligence.

*W. Cas. & Surety Co. v. Shell Oil Co.*, 413 S.W.2d 550, 556 (Mo.App.1967). *See also Alabama Great S. R.R. v. Chicago & N. W. Ry. Co.*, 493 F.2d 979, 984–87 (8th Cir. 1974).

■ Here the Railroad failed to request any instructions or special interrogatories on indemnity. Nor did it otherwise alert the district court to the need for proper instructions. *See, e. g., Dulin v. Circule F. Industries*, 558 F.2d 456 (8th Cir. 1977). In fact the Railroad has never clearly distinguished the two theories of recovery which its pleadings and briefs evoke. Instead it has consistently argued, both before the district court and this court, that it was not required to request indemnity instructions on any aspect of its indemnity claim.

■ This erroneous omission on the part of the Railroad brings into play Fed.R. Civ.P. 51 which provides:

> No party may assign as error the giving *or the failure to give* an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. (Emphasis added.)

We have repeatedly stated that the purpose of Rule 51 is to compel litigants to afford the trial court an opportunity to cure an defective instruction and to prevent litigants from ensuring a new trial in the event of an adverse verdict by covertly relying on the error. *Fulton v. Chicago, Rock Island & Pacific R.R.*, 481 F.2d 326, 338 (8th Cir.), *cert. denied*, 414 U.S. 1040, 94 S.Ct. 540, 38 L.Ed.2d 330 (1973); *Meitz v. Garrison*, 413 F.2d 895, 899 (8th Cir. 1969); *Chicago Great W. Ry. Co. v. Casura, supra*, 234 F.2d at 445. Pursuant to Rule 51, a failure to object to a jury charge in a timely and specific manner results in a waiver of such objections on appeal. *Alabama Great S. R.R. v. Chicago & N. W. Ry. Co., supra*, 493 F.2d at 984; *Klapmeier v. Telecheck International, Inc.*, 482 F.2d 247, 255 (8th Cir. 1973); *Fulton v. Chicago, Rock Island & Pacific R.R., supra*, 481 F.2d at 338–39. Moreover, any plain error exception to the rule (and no such error is demonstrated here) is "confined to the exceptional case where the error has seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Horace v. St. Louis Southwestern R.R.*, 489 F.2d 632, 634 (8th Cir. 1974); *Figge Auto Co. v. Taylor*, 325 F.2d 899 (8th Cir. 1964).

■ Where, as here, the plaintiff simply fails to request an instruction on a necessary element of his cause of action and does not demonstrate plain error on the trial court's part in failing *sua sponte* to formulate and give an appropriate instruction, we can only conclude that he has waived any further resolution of the issue. Thus, we affirm the district court's decision that the Railroad is entitled only to contribution.

■ As to the issue of court costs, the district court, contrary to the Railroad's assertions, clearly expressed its intention to disallow the Railroad's request for costs in its June 13, 1978 order. While costs are normally awarded to the prevailing party, such an award is within the sound discretion of the trial court, and a refusal to award costs can only be overturned upon a finding that the district court abused its

discretion. Fed.R.Civ.P. 54(d); *Boyd v. Ozark Air Lines, Inc.,* 568 F.2d 50, 55 (8th Cir. 1977); *Environmental Defense Fund, Inc. v. Callaway,* 497 F.2d 1340, 1342 (8th Cir. 1974); 6 Moore's Federal Practice ¶ 54.-70[5] (2d ed. 1976). We find no such abuse of discretion here.

Affirmed.